Case 2:20-cr-00045 Document 43 Filed on 07/23/21 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
July 23, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 2:20-CR-45 |
| § | |
| PEDRO VALLES § | |

## ORDER GRANTING MOTION TO SUPPRESS

Defendant Pedro Valles is charged with one count of possession of a firearm by a convicted felon. D.E. 1. Before the Court is Valles's motion to suppress (D.E. 29), to which the Government has responded (D.E. 30). The Court held a hearing on June 23, 2021, where Officer Dana Robbins, Valles, and his wife April Green Valles ("Green Valles") testified. Valles and the Government submitted additional briefs on July 2 and July 9, 2021, respectively. D.E. 41, 42. For the reasons set forth below, Valles's motion to suppress is GRANTED.

### FACTS

**A. The Traffic Stop**

On January 3, 2019, around midnight, Valles emerged from a convenience store where he had gone to pick up some groceries. The convenience store parking lot was brightly lit and in full view of the area of the neighboring church where Corpus Christi Police Department (CCPD) Officer Dana Robbins was parked. As Valles walked to his vehicle, he could be clearly seen as bald and wearing a muscle shirt and shorts that revealed numerous tattoos. He noticed the marked CCPD unit and watched it leave its parking place and follow him as he drove down Tarlton Street.

1 / 8

Officer Robbins followed Valles for approximately one mile as he stopped at each traffic signal. Valles called his wife because he had not found the items he had gone shopping for and he told her that he was being followed by the police car. She suggested he look for the items at another store and assured him that he would be fine if he drove carefully.

Valles testified that he did drive carefully. As he stopped at each signal, he counted to five before resuming the drive. He was aware from a prior experience that the police would use the slightest infraction as a pretext for a traffic stop of people who look like him. At the intersection of Tarlton Street and South Port Avenue, he stopped because the light was red. Officer Robbins immediately activated her lights and siren and initiated the traffic stop that is at the center of this motion to suppress. Valles called Green Valles to let her know that he was being stopped and where he was.

At the time of the stop and in her initial testimony at the hearing, Officer Robbins claimed that Valles failed to yield at a crosswalk. She did not testify that he failed to stop at the light. And she did not recall whether there were any pedestrians or other traffic in the crosswalk. In fact, Officer Robbins cast doubt on her testimony because she failed to recall many of the details of the traffic stop, including where she had been parked before she began following Valles, how long she followed him, and who she talked to and what she said during and immediately after the stop, particularly with respect to the effort to gain consent to a search of the vehicle. But in sum, her complaint was simply that he did not yield before breaching the line marking the crosswalk.

When counsel explored the exact nature of the traffic violation, Officer Robbins first testified on direct examination that Valles did not stop at "the alleged stop line." Later, on re-direct, she testified that there was a stop line, but that he stopped in the crosswalk. Valles, who was driving a large vehicle—a Ford Expedition—testified that it was dark and Officer Robbins, who was traveling behind him, could not have seen the lines on the street as they related to his vehicle from her location. So she could not see that he actually stopped before the crosswalk in his careful effort to prevent giving the officer any reason to stop him.

Officer Robbins did not controvert that testimony. She did not testify as to the visibility of the stop or crosswalk lines or her angle of view from directly behind Valles's Expedition. And the Government did not offer any additional evidence on the issue, explaining that the dash cam and body cam video did not record any of the events prior to the search of the car. Even though Valles had asked Officer Robbins to ensure that her body cam was recording, no such video is available to support Officer Robbins' vague and incomplete testimony.

B. The Search of the Car

Officer Robbins spoke to Valles and determined that he did not have a valid driver's license. She ordered him out of the vehicle and conducted a pat down, finding that Valles was carrying three knives. Although she did not find it, he volunteered that he was carrying a fourth knife, which he respectfully surrendered. At that point, Officer Robbins asked for Valles's consent to search the vehicle. Valles denied the request because the vehicle belonged to his wife, Green Valles.

By then, Officer Robbins's backup, Officer Garza had arrived. One of the officers, Robbins could not recall which, phoned Green Valles to request her consent to search the vehicle. Green Valles denied the request. She arrived shortly thereafter, while Valles was handcuffed and detained in the back of Officer Robbins's patrol vehicle. Officer Garza again asked Green Valles for consent to search the vehicle and she again declined.

After consent to search was denied, the officers claimed that there was a marijuana smell emanating from the vehicle, thus eliminating the need for consent. Officer Robbins did not testify as to any expertise—through training or experience—in identifying such a smell. Valles and Green Valles testified that there was no marijuana in the car and no smell of marijuana anywhere near Valles or the car. On the basis of this alleged smell, the officers conducted a search of the vehicle, opening a closed center console where they found a semi-automatic pistol and what they described as a small portion of a burnt "wet roach."

The officers failed to preserve any proof that there was marijuana in the car. After the hearing, the Government submitted, with their supplemental brief, a picture of what they assert was a still photograph from the body cam of Officer Garza, depicting a small portion of a marijuana cigarette. The picture shows a small dark cylindrical object, consistent with any type of cigarette and there is an adjacent cigarette pack in the picture. The picture is not accompanied by any statement under penalty of perjury as to what the substance is or whether it was tested as a controlled substance.

Officer Robbins did not issue any citation to Valles for a moving violation, driving without a license, or possessing a controlled substance. She cited him only for being a felon in possession of a firearm.

## DISCUSSION

### I. Standard of Review

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

To justify that seizure, the government bears the burden of showing: (1) the stop was justified in its inception; and (2) the officer's subsequent actions were "reasonably related in scope" to the circumstances giving rise to the stop. *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 88 (1968)). If the traffic violation claimed as justification for the stop is shown to be mere pretext, the stop is still considered reasonable if the officer's belief that a traffic violation occurred is objectively grounded. *Whren*, 517 U.S. at 809-810.

When the government searches or seizes a defendant without a warrant, the government bears the burden of proving that the search or seizure was supported by reasonable suspicion. *Kansas v. Glover*, 140 S. Ct. 1183, 1187–88 (2020). The standard of proof is by a preponderance of the evidence. *United States v. Guerrero-Barajas*, 240

F.3d 428, 432 (5th Cir. 2001).  To satisfy this burden, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion on constitutionally guaranteed rights. *Terry*, 392 U.S. at 21.  Finally, under the exclusionary rule, any evidence obtained because of an illegal seizure is excluded. *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999).

## II.   Analysis

Valles contends that the initial traffic stop was merely pretextual, was not objectively grounded in a reasonable belief that he committed a moving violation, and was therefore a violation of the Fourth Amendment.  D.E. 29.   He also argues that Officer Robbins and Officer Garza did not have probable cause to search his vehicle because there was no credible evidence of marijuana or an odor of marijuana.

### A. The Initial Stop

The traffic stop must be justified at its inception.  At the hearing, Officer Robbins's testimony did not satisfy the burden of showing by a preponderance of the evidence that Valles had violated any provision of the Texas Transportation Code as alleged or even that she reasonably believed that he had.  She failed to persuade the Court that she could see exactly where Valles stopped his car at the red light.  She further failed to identify any law on which she relied at the time, even when testifying at the hearing.  While the Government attempted to rehabilitate her testimony by arguing that Valles also crossed a stop line, failing to stop before a stop line was not the reason why Officer Robbins initiated the traffic stop.

The violation that the Government's counsel cited when providing argument at the suppression hearing, Texas Transportation Code § 544.007, provides that the driver "shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop before entering the crosswalk on the near side of the intersection." After stopping, the driver must "yield[] [the] right-of-way to pedestrians lawfully in an adjacent crosswalk and other traffic lawfully using the intersection."

The Court finds that the Government failed to demonstrate that any stop line was "clearly marked" or that this provision was the basis for Officer Robbins's actions. Moreover, the Government failed to show, by a preponderance of the evidence, that Valles actually stopped his car in the crosswalk or had a duty to yield to the crosswalk under the circumstances. Valles's testimony to the contrary was clear and uncontroverted.

Based on the evidence and testimony before the Court, the Government failed to meet its burden to show by a preponderance of the evidence that the traffic stop was justified at its inception. Because the traffic stop was a Fourth Amendment violation, the evidence of the semi-automatic pistol in the car must be excluded as fruit of the poisonous tree.

## B. The Search of the Car

Because the initial stop was a constitutional violation, the Court need not and does not reach the question of whether the search of the car was justified by Officer Robbins's questionable testimony that she smelled marijuana.

## CONCLUSION

Having considered the evidence, arguments of counsel, and the applicable law, Valles's motion to suppress (D.E. 30) is GRANTED. The Court ORDERS that the evidence of the firearm found in Valles's vehicle is EXCLUDED.

ORDERED this 23rd day of July, 2021.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE